

FILED
May 03, 2022
10:22 AM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Marie P. Bailey | ) Docket No. 2021-01-0057 |
| | ) |
| v. | ) State File No. 800047-2021 |
| | ) |
| Amazon, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Audrey A. Headrick, Judge | ) |

---

## Affirmed and Remanded

---

The employee reported an injury to her right arm and shoulder when it was struck by a large cart at work. The employer initially accepted the claim as compensable and authorized medical treatment. Following two missed medical appointments, the employer denied the claim and refused to authorize additional medical care. After an expedited hearing, the trial court concluded the employee had come forward with sufficient evidence to show a likelihood of prevailing at trial with respect to her claim for additional medical benefits. The employer has appealed. We affirm the trial court's order and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin joined.

W. Troy Hart and Matthew B. Morris, Knoxville, Tennessee, for the employer-appellant, Amazon

Carmen Y. Ware, Chattanooga, Tennessee, for the employee-appellee, Marie P. Bailey

## Factual and Procedural Background

Marie P. Bailey ("Employee") worked for Amazon ("Employer") as a sorter. On November 15, 2020, Employee was moving a large cart when another cart was pushed into her, causing her to strike her right hand and arm against a cart. Employee reported the incident and went to Employer's onsite medical clinic where she received initial treatment for pain, swelling, and bruising in her hand. The following day, she returned to the onsite clinic and requested additional medical care. She was provided a panel of physicians from

1

which she selected Dr. Robert Sass. On November 24, 2020, Dr. Sass ordered x-rays of the right hand, which revealed no fractures, and diagnosed Employee with a contusion of the right hand. Employee was scheduled for a return visit on December 1, but the record on appeal contains no report of a medical visit on that date.

On January 1, 2021, Employer notified Employee it had denied her claim due to her missing two scheduled appointments on December 1 and December 17, 2020. Employer then terminated her employment as of January 7, 2021. When Employee returned to Dr. Sass's office on January 11, 2021, Dr. Sass recommended an MRI of the right hand "regarding pain [in the] thumb area following crush injury." There is nothing in the record indicating the MRI was authorized or completed, and there are no records indicating she received any additional medical treatment.

Thereafter, Dr. Sass received a "Medical Questionnaire" from Employer's counsel, which he answered and signed on May 27, 2021. In question 2, Dr. Sass was advised "[p]er Tennessee law" that "medical noncompliance occurs when patients fail to attend a single scheduled doctor's visit." Dr. Sass was also advised that Employee had "missed at least three regularly scheduled visits." Dr. Sass was then asked, "Was this medical noncompliance a negative impact on the treatment of [Employee]?" He responded "yes." He also responded "yes" to the following questions: "Is it your medical opinion that [Employee]'s medical noncompliance acted as an intervening event that impacts her recovery and treatment from her right hand contusion?" and "Do you believe that [Employee]'s medical noncompliance and the delay in her treatment that it caused contributed more than fifty percent (50%) in causing her current condition?"

After Employer denied her claim, Employee filed a petition for benefits and a request for an evidentiary hearing.[1] During the hearing, Employee disputed Employer's characterization of the missed medical appointments. She testified she missed the December 1 appointment because she was diagnosed with COVID-19, and she stated she was never advised of the December 17 appointment.

Following the hearing, the trial court concluded Employee had come forward with sufficient evidence to indicate a likelihood of her prevailing at trial in showing an entitlement to additional medical benefits. The court put little weight on Dr. Sass's responses to the medical questionnaire and noted that several of the questions "assumed facts not in evidence." The trial court also noted that the statutory remedy for medical noncompliance, if such noncompliance were proven, is the suspension of benefits during the period of noncompliance, which was not done in this case. As a result, the court ordered Employer to authorize additional medical care with Dr. Sass, and Employer has appealed.

---

[1] At the time of the expedited hearing, Employee was self-represented. During the pendency of this appeal, Employee's attorney entered an appearance.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2021). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2021).

## Analysis

The issue in this appeal is whether Employee came forward with sufficient evidence indicating she is likely to prevail at trial in proving an entitlement to additional medical benefits. In circumstances where an employer alleges the employee has failed to comply with prescribed medical treatment or failed to attend medical appointments, a court must consider several statutory provisions. First, Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) requires an injured worker to "accept the medical benefits afforded under this section" if the employer has satisfied its statutory obligation to provide a proper panel of physicians in accordance with that subsection. In this case, it is undisputed that Employer provided a proper panel and that Employee selected Dr. Sass from that panel.

Second, if an injured employee "refuses to comply with any reasonable request for examination or to accept the medical or specialized medical services that the employer is required to furnish," then the employee's "right to compensation shall be suspended . . . *while the injured employee continues to refuse*." Tenn. Code Ann. § 50-6-204(d)(8) (emphasis added). We previously addressed this subsection in *Newell v. Metro Carpets, LLC*, No. 2015-05-0091, 2016 TN Wrk. Comp. App. Bd. LEXIS 57 (Tenn. Workers' Comp. App. Bd. Sept. 28, 2016), as follows:

> Since at least 1940, the Tennessee Supreme Court has interpreted this provision to mean that in circumstances where an employee is noncompliant with medical treatment, "compensation shall be held in abeyance, not terminated." *Blevins v. Pearson Hardwood Flooring Co.*, 144 S.W.2d 781, 783 (Tenn. 1940); see also *Hughes v. All Weather Insulation Co.*, 394 S.W.2d

638 (Tenn. 1965) (employee's refusal to undergo recommended surgery supported suspension of compensation).

*Id.* at *4-5. Here, it is questionable whether Employee's actions constituted noncompliance under subsection 204(d)(8). Employer has provided no evidence establishing Employee "refused" authorized medical treatment offered by Employer. Employee testified without refutation that she missed the December 1, 2020 appointment because she had been diagnosed with COVID-19, and she was not aware of the December 17 appointment.[2] Thus, the evidence submitted at the expedited hearing supports the trial court's conclusion that Employee "never refused to accept the medical treatment [Employer] offered."

Moreover, even if we assume the two missed appointments in December 2020 constituted medical noncompliance in accordance with subsection 204(d)(8), Employer's remedy, as noted above, was to suspend Employee's compensation during the period of noncompliance. *See, e.g.*, *Rhodes v. Amazon.com, LLC*, No. 2018-01-0349, 2019 TN Wrk. Comp. App. Bd. LEXIS 24, at *23-24 (Tenn. Workers' Comp. App. Bd. June 11, 2019) ("Employee's refusal to attend [a medical appointment] based on location [of the physician's office] was unreasonable, and Employer appropriately suspended his right to compensation as provided in section 50-6-204(d)(8)."). Instead, apparently before seeking any explanation for the missed appointments from Employee, Employer issued a notice of denial on January 1, 2021, and specifically based its denial on the alleged noncompliance.

Further, Employer's efforts to support its denial by sending Dr. Sass a medical questionnaire sometime later is unpersuasive. The questionnaire acknowledges Employee suffered a work injury, but it asks Dr. Sass to presume certain statements of law as accurate without providing any support for such statements. For example, the questionnaire includes the following as a preamble to question 2: "Per Tennessee law, medical noncompliance occurs when patients fail to attend *a single scheduled doctor's visit*." (Emphasis added.) This statement of law is unsupported by any statutory or case law reference. Moreover, question 3 suggested that medical noncompliance can act as "an intervening event," but, instead of using that phrase in the context of medical causation, which is how that term is typically used in workers' compensation cases, it asked whether the noncompliance was "an intervening event that *impacts her recovery and treatment*."[3]

---

[2] Employer asserts in its brief that Employee's reasons for missing the appointments are immaterial. We disagree. To establish medical noncompliance, Employer must show Employee refused treatment. Cancelling an appointment due to a COVID-19 diagnosis and missing an appointment because she was unaware of it do not demonstrate a refusal to accept medical services. Thus, Employee's reasons for missing the appointments are central to the determination of whether medical noncompliance exists.

[3] The "independent, intervening act" defense was analyzed by the Tennessee Supreme Court in *Anderson v. Westfield Group*, 259 S.W.3d 690 (Tenn. 2008). The defense can be established with evidence that an independent, intervening act broke the chain of causation between the work-related accident and the employee's injury. *Id.* at 697. The Court made clear that when such a defense is based on an employee's conduct, the conduct must be deemed intentional, reckless, or negligent. *Id.* at 698-99. There is no proof

(Emphasis added.) Dr. Sass's response to that question is irrelevant to the issue of whether Employee suffered a work-related injury that resulted in the need for medical care.

In its brief, Employer argues that, by assessing the content of the questions posed to Dr. Sass, the trial court became an advocate for Employee. We disagree. Pursuant to Rule 703 of the Tennessee Rules of Evidence, a trial court is instructed to consider "[t]he facts or data . . . upon which an expert bases an opinion or inference." A trial court is further instructed to disallow opinion testimony "if the underlying facts or data indicate lack of trustworthiness." Tenn. R. Evid. 703. When evaluating expert proof, a trial court "is allowed, among other things, to consider the qualifications of the experts, the circumstances of their examinations, *the information available to them*, and the evaluation of the importance of that information by other experts." *Bass v. The Home Depot U.S.A., Inc.*, No. 2016-06-1038, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at \*9 (Tenn. Workers' Comp. App. Bd. May 26, 2017) (emphasis added). The trial court had an obligation to consider the facts or data underlying Dr. Sass's opinions, including the hypothetical conditions specified in the question, and it properly did so in this case.

Employer further argues that it "is not obligated to condition [its] questions to experts in such a way as to present a beneficial case for the Employee." While we agree an employer need not couch questions to an expert in a light favorable to the employee, the manner in which such questions are worded is relevant in considering the expert's responses. An employer risks a trial court giving little weight to an expert's response to a question that contains one or more misstatements of law or fact. In short, we agree with the trial court's assessment of the weight given to Dr. Sass's responses to the medical questionnaire.

In sum, it is undisputed that Employee suffered a work-related injury to her right upper extremity. It is undisputed that Employee selected Dr. Sass as her authorized treating physician. It is undisputed that Dr. Sass recommended an MRI and additional treatment as a result of her work-related crush injury. It is undisputed that this recommendation for additional treatment occurred *after* the two missed appointments that formed the basis of Employer's denial of the claim. Employer's decision to deny Employee's claim based on her missing two medical appointments, without considering any explanation as to why she missed the appointments, is unsupported by Tennessee law. The delay in treatment caused by Employee's unsupported denial of the claim is far more onerous under the circumstances of this case than the two missed medical appointments.

Finally, Employee has asked that we deem Employer's appeal frivolous and award attorneys' fees and costs. Although we disagree with Employer's assertions regarding the applicability of Tennessee Code Annotated section 50-6-204(d)(8) and the independent,

---

in this record that Employee's failure to attend medical appointments on December 1 and 17 constituted intentional, reckless, or negligent conduct and, in fact, Employer made no attempt to offer such proof.

5

intervening act defense, we conclude Employer's appeal is not frivolous under the circumstances presented in this case.

## Conclusion

For the foregoing reasons, we affirm the trial court's order and remand the case. Costs on appeal are taxed to Employer.



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Marie P. Bailey | ) | Docket No. 2021-01-0057 |
| | ) | |
| v. | ) | State File No. 800047-2021 |
| | ) | |
| Amazon, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Audrey A. Headrick, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 3rd day of May, 2022.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Matthew B. Morris<br>W. Troy Hart | | | | X | mbmorris@mijs.com<br>wth@mijs.com |
| Carmen Y. Ware | | | | X | cyware@thewarelawfirm.com |
| Audrey A. Headrick, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

O. Yearwood

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov